**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0807
Sockwell Corners, LLC et al.
v.
Newton County

On Appeal from the Superior Court of Newton County
No. 2024CV1534

Decided: June 2, 2026

PETERSON, Chief Justice.

This case raises the question of whether recent statutory amendments abrogate our precedent on whether OCGA § 5-6-35(a)(1) requires appeals like this — an appeal from a decision of a superior court affirming a local zoning board's decision to deny a request for rezoning of a particular piece of property — to come by discretionary application. Those amendments did not modify the statutory text that our precedent has long interpreted as requiring those appeals to come by application, nor did they change the fundamental character of the processes at issue. So we conclude that those amendments do not abrogate our precedent. Because the appellants here did not follow the discretionary application requirements of OCGA § 5-6-35, this appeal is dismissed.

Sockwell Corners, LLC owns a tract of land currently zoned by Newton County as agricultural-residential. Sockwell Corners and proposed purchasers/developers Ed Hutter and Integral Enterprises, LLC (collectively, "the Appellants") filed an application to rezone the property, but the application was denied

by the Newton County Board of Commissioners on July 16, 2024. The Appellants then filed the underlying verified complaint for declaratory and injunctive relief, asserting that the county's zoning ordinance was unconstitutional as applied to the property. Following a bench trial, the Superior Court rejected the Appellants' as-applied constitutional challenge in an order entered on August 7, 2025.

The Appellants timely filed a notice of appeal to this Court, asserting that the Court has subject matter jurisdiction because the case involves the constitutionality of an ordinance. The Appellants also indicated in their Notice of Appeal that the direct appeal was procedurally appropriate because "[OCGA] § 5-6-34(a)(14) provid[es] for direct review of all final judgments or orders reviewing a zoning decision as such term is defined in [OCGA § 36-66-3(4)]." We directed the parties to file supplemental briefing on the question of whether this appeal is subject to dismissal for the Appellants' failure to follow the discretionary application procedures of OCGA § 5-6-35.

"It is incumbent upon this Court, even when not raised by the parties, to inquire into its own jurisdiction." *Dias v. Boone,* 320 Ga. 785, 789 (2025) (quotation marks omitted). "The provisions of the law respecting the procedure to be followed in perfecting appeals to this Court are jurisdictional, and unless this Court has jurisdiction of a case, it is without power or authority to render a judgment upon review." *Duke v. State,* 306 Ga. 171, 172 (2019) (cleaned up). This includes failure to comply with the discretionary application requirements of OCGA § 5-6-35. See *Crosson v. Conway,* 291 Ga. 220, 220 (2012).

Here, we will first review the fundamentals for pursuing appeals to this Court and the Court of Appeals generally, and our precedent on pursuing appeals in zoning-related cases

2

specifically. Next, we will describe the recent legislation that the Appellants contend abrogate key precedent in that regard. Finally, we will explain why that legislation has not abrogated our precedent.

1. *Background on pursuing appeals in zoning-related cases*

"Two code sections determine the method for pursuing appeals to this [C]ourt and the Court of Appeals." *Rebich v. Miles*, 264 Ga. 467, 468 (1994). OCGA § 5-6-34(a) lists the trial court judgments and orders that may be appealed directly without following the interlocutory appeal requirements of that statute, including "[a]ll final judgments." OCGA § 5-6-34(a)(1). OCGA § 5-6-35(a) imposes a separate requirement that, in certain cases, a party must file an application for discretionary appeal. Where the appeal is one that is listed in OCGA § 5-6-35(a), "the discretionary application procedure must be followed, even when the party is appealing a judgment or order that is procedurally subject to direct appeal under OCGA § 5-6-34(a)." *Rebich*, 264 Ga. at 468. See also *Dias*, 320 Ga. at 789 ("[I]f the underlying subject matter is listed in OCGA § 5-6-35(a), a party must follow the discretionary application process in order to appeal immediately.").

Under our precedent, a superior court order affirming a local zoning board's application for rezoning is generally a final order such that compliance with the interlocutory appeal procedures of OCGA § 5-6-34 is not required. See *Diversified Holdings v. City of Suwanee*, 302 Ga. 597, 600 (2017). But as noted above, that does not answer the question of whether the discretionary application procedures of OCGA § 5-6-35 must be followed.

3

As relevant here, OCGA § 5-6-35(a)(1) requires a discretionary application to appeal from superior court decisions reviewing decisions of certain bodies and lower courts, giving the appellate courts discretion whether to entertain such appeals. See *Rebich*, 264 Ga. at 468. In particular, OCGA § 5-6-35(a)(1) has long required a discretionary application for "[a]ppeals from decisions of the superior courts reviewing decisions of … state and local administrative agencies[.]" See Ga. L. 1979, p. 619–22, § 3. In a case not about zoning, *State v. International Keystone Knights of the Ku Klux Klan, Inc.*, 299 Ga. 392 (2016), we considered the meaning of the statutory term "decision." We looked to various sources, such as dictionary definitions of "decision," including one suggesting that "when lawyers use the term, they generally are understood to mean '[a] determination arrived at after consideration of facts, and, in legal context, law' or '[a] determination of a judicial or quasi judicial nature.'" Id. at 402 (quoting *Black's Law Dictionary* at 366 (5th ed. 1979)). We also considered the statutory context of that term, including the list of other bodies for which an appeal of a superior court order reviewing their "decisions" required a discretionary application under OCGA § 5-6-35(a)(1): in addition to state and local administrative agencies, the statute included the State Board of Workers' Compensation, the State Board of Education, auditors, and the lower courts. We reasoned: "Of those with whom the statute is concerned, some — including 'administrative agencies' — have executive and quasi-legislative functions, but they all have an adjudicative role. The adjudicative function strikes us as the most obvious tie that binds the various institutions and offices with which OCGA § 5-6-35(a)(1) is concerned." Id. at 402–03 (citing *Hill v. Owens*, 292 Ga. 380, 383 (2013) ("Words, like people, are judged by the company they keep." (quotation marks omitted))). We ultimately determined that "decision" as it is used

4

to refer to "decisions of … state and local administrative agencies" in OCGA § 5-6-35(a)(1) referred to an "adjudicative," not a "legislative," determination. *Keystone Knights*, 299 Ga. at 404. We characterized administrative decisions of a legislative nature as "prospective in application, general in application, and often marked by a general factual inquiry that is not specific to the unique character, activities or circumstances of any particular person." Id. at 401 (citations omitted). In contrast, we characterized determinations of an adjudicative nature as "immediate in application, specific in application, and commonly involv[ing] an assessment of facts about the parties and their activities, businesses, and properties." Id. (citations and quotation marks omitted).

Applying that rubric, we have held that the "enactment of a new development code is an exercise of legislative power — and thus not an adjudicative 'decision' under" OCGA § 5-6-35(a)(1) — such that the statute does not require an application for discretionary appeal to appeal a superior court decision on a challenge to a zoning ordinance itself. See *Schumacher v. City of Roswell*, 301 Ga. 635, 637–38 (2017). We acknowledged prior precedent that had announced that discretionary applications were required to appeal in "zoning cases" but concluded that a challenge to a zoning ordinance itself, with no claim regarding the zoning of any particular parcel of land, is not a "zoning case" within the meaning of that prior precedent. See id. at 638–41.

In contrast, in *Diversified Holdings*, we applied *Keystone Knights* to reaffirm that compliance with OCGA § 5-6-35's discretionary application procedures was required in order for us to have jurisdiction over an appeal from a superior court order affirming a city council's denial of an application to rezone a particular piece of property. See *Diversified Holdings*, 302 Ga. at

5

600–05. We characterized that denial as "a local zoning board's decision that the zoning regulations applied to a particular piece of property are not unlawful[.]" Id. at 605. We reaffirmed that county boards of commissioners or city councils "are acting as administrative agencies under OCGA § 5-6-35(a)(1) when they are performing a function that is the equivalent of the function of an administrative agency" and that "the discretionary application procedure applies to *adjudicative* or quasi-judicial decisions by local administrative agencies." Id. at 600–01, 604 (quotation marks omitted). Citing *Keystone Knights* for the idea that "[a]n adjudicative decision can be quasi-judicial in nature and is characterized by proceedings that inquire into facts and circumstances of the party (or parties) appearing before the decision maker[,]" we reasoned:

> [A]n application to rezone a particular parcel like the application involved here involves an individualized determination based on the character and circumstances of that particular parcel of land. A landowner's challenge that seeks recognition that a zoning ordinance is unlawful with respect to a particular parcel of land thus is the type of individualized application of law to facts and circumstances that constitutes an adjudicative decision and requires a discretionary application.

Id. at 601, 603. Thus, we concluded, the city council's denial of the rezoning application amounted to "a decision of a local administrative agency," and appeals from superior court decisions reviewing such denials must come by application. Id. at 603–05.

6

### 2. *Recent legislation relied on by the Appellants*

After we decided *Diversified Holdings*, the legislature enacted various amendments to the Zoning Procedures Law and the Appellate Practice Act. Among other amendments, in 2022, the General Assembly amended OCGA § 36-66-3(4)(C) to revise the definition of the term "zoning decision" for purposes of the Zoning Procedures Law to include "final legislative action by a local government which results in … [t]he adoption or *denial of* an amendment to a zoning ordinance to rezone property from one zoning classification to another[,]" not just "adoption" of such an amendment, as the statute provided previously. See Ga. L. 2022, pp. 825, 827, § 1 (emphasis added). The legislature also added at OCGA § 36-66-3(1.1) a definition of "quasi-judicial officers, boards, or agencies" that excluded those officers, boards, or agencies rendering "zoning decision[s]." See id. Additionally, in 2022 the legislature added a new provision of the Zoning Procedures Law, OCGA § 36-66-5.1, that provided for de novo review in superior court of certain types of "zoning decisions," including "denial of an amendment to a zoning ordinance to rezone property from one zoning classification to another," describing those decisions as "legislative in nature." See id. at pp. 831–32, § 1.[1]

The General Assembly also amended the Appellate Practice Act in 2025. The legislature amended OCGA § 5-6-34 to add "[a]ll final judgments or orders reviewing a zoning decision,

---

[1] The 2022 provision grouped a certain type of "zoning decision," that type described under OCGA § 36-66-3(4)(E), with "quasi-judicial decisions" that were to be subject to only appellate review by the superior court pursuant to petitions for review, rather than de novo review. But this carve-out for zoning decisions under OCGA § 36-66-3(4)(E) was deleted in a 2025 amendment. See Ga. L. 2025, pp. 476, 487, § 2-7.

as such term is defined in paragraph (4) of Code Section 36-66-3," to the list of rulings from which appeals may be taken to this Court or the Court of Appeals without following the interlocutory application procedure. See Ga. L. 2025, pp. 476, 482, § 2-1. The General Assembly also amended subsection (1) in OCGA § 5-6-35(a) to add "[a]ppeals from decisions of the superior courts reviewing … quasi-judicial decisions of boards or agencies in local governments, including those defined in paragraphs (1.1) and (1.2) of Code Section 36-66-3" to the list of matters requiring a discretionary application. See Ga. L. 2025, pp. 476, 483, § 2-2. And the legislature further amended OCGA § 36-66-3, specifically amending the definition of "quasi-judicial boards or agencies" at subsection (1.1) as "any board or agency designated by ordinance to make quasi-judicial decisions," and adding a new definition of "quasi-judicial decision" at subsection (1.2) as "a final quasi-judicial action that is the exercise of quasi-judicial land use powers, including hearing appeals of administrative decisions and hearing and rendering decisions on applications for variances, administrative permits, *or other similar permits not enumerated herein as a zoning decision*, pursuant to standards for the exercise of such quasi-judicial authority adopted by a local government." See id. at p. 484, § 2-4 (emphasis added). In other words, the General Assembly added a new category of orders whose appeals require discretionary applications — those from superior court orders that reviewed "quasi-judicial decisions of boards or agencies in local governments" — and specifically excluded from that category superior court orders reviewing a "zoning decision."

3. *Analysis*

The Appellants argue that under these amendments, the determination that was reviewed by the Superior Court here was

8

a legislative "zoning decision," such that no application for discretionary appeal is required, rather than an adjudicative decision requiring such an application under *Diversified Holdings*. But even assuming these amendments apply to this case,[2] we conclude that those amendments did not abrogate our precedent and an application for discretionary appeal was required here.

The Appellants point to the 2022 changes to the Zoning Procedures Law, which cast the "denial of an amendment to a zoning ordinance to rezone property from one zoning classification to another" as both a "zoning decision" and "legislative" in nature, see OCGA §§ 36-66-3(4)(C), 36-66-5.1(a)(1), and not "quasi-judicial," see OCGA § 36-66-3(1.1) (2022); see also OCGA § 36-66-3(1.2) (2025). They argue that these changes alone established that "the decision being reviewed [here] is legislative," such that "the discretionary appeal

---

[2] As explained further below, the only amendment to the statutory provision that we construed in *Diversified Holdings*, OCGA § 5-6-35(a)(1), that is relied on by the Appellants is the 2025 amendment to that statute. But the effective date of that amendment, as well as the other 2025 amendments referenced herein, was July 1, 2025, and the legislation provided that the amendments were to "apply to all zoning and quasi-judicial decisions occurring on and after such date[.]" Ga. L. 2025, pp. 476, 488, § 3-1(b). So even if the County's decision here is the sort of decision that would qualify as a "zoning decision" such that, under the Appellants' argument, appellate review of a superior court order reviewing that decision would not need to come by discretionary application based on the 2025 amendments, it would seem that those amendments would not apply here, as that decision by the County rejecting the Appellants' zoning application was rendered on July 16, 2024. But because we reject the Appellants' argument that no discretionary application is required under the statutory amendments, even assuming they were effective at the relevant time for purposes of this case, we need not consider that question of construction of the effective-date provision of the relevant legislative enactment.

procedure of OCGA § 5-6-35 is not applicable[.]"But by its express terms, OCGA § 36-66-3 applies the definitions contained therein only to Chapter 66 of Title 36, the Zoning Procedures Law. And OCGA § 33-66-5.1 by its terms provides a "mechanism by which each of the powers described in [that] chapter may be reviewed by the superior court of the county wherein such property is located[,]" not a mechanism for appellate review by this Court or the Court of Appeals. OCGA § 33-66-5.1(a). Appellate review is governed by the Appellate Practice Act, and our decision in *Diversified Holdings* specifically amounted to a construction of the terms of OCGA § 5-6-35(a)(1). The 2022 amendments did not change the text of the statutory provision we construed therein, OCGA § 5-6-35(a)(1). And that analysis turned on the nature and substance of agency decisions, not merely labels. The Zoning Procedures Law's characterization of the "denial of an amendment to a zoning ordinance to rezone property from one zoning classification to another" as "legislative," see OCGA §§ 36-66-3(4)(C), 36-66-5.1(a)(1), does not alter the essential characteristics of the sort of decision at issue here: "individualized application of law to facts and circumstances that constitutes an adjudicative decision" such that it constitutes a "decision" as that term is used to refer to "decisions of … state and local administrative agencies" in OCGA § 5-6-35(a)(1). See *Diversified Holdings*, 302 Ga. at 603.

The Appellants also point to the 2025 amendment to OCGA § 5-6-34 adding "[a]ll final judgments or orders reviewing a zoning decision, as such term is defined in paragraph (4) of Code Section 36-66-3," to the list of rulings from which appeals may be taken without following the interlocutory application procedure. As noted above, the legislature already had amended OCGA § 36-66-3(4)(C) to provide that the term "zoning decision" for purposes of the Zoning Procedures Law included "denial of an amendment to

10

a zoning ordinance to rezone property from one zoning classification to another." See Ga. L. 2022, pp. 825, 827, § 1. And the Appellants initially averred in their Notice of Appeal that a direct appeal is authorized by OCGA § 5-6-34. But inclusion of "[a]ll final judgments or orders reviewing a zoning decision" in the list provided in OCGA § 5-6-34 is irrelevant to the question of whether a *discretionary* application is required for such an order. As explained above, where the appeal is one that is listed in OCGA § 5-6-35(a), "the discretionary application procedure must be followed, even when the party is appealing a judgment or order that is procedurally subject to direct appeal under OCGA § 5-6-34(a)." *Rebich*, 264 Ga. at 468. See also *Dias*, 320 Ga. at 789.[3]

Another legislative amendment in 2025 did alter the text of OCGA § 5-6-35, which governs whether a discretionary application is required and was the subject of our ruling in *Diversified Holdings*. Specifically, as noted above, the General Assembly amended subsection (1) in OCGA § 5-6-35(a) to add "[a]ppeals from decisions of the superior courts reviewing … quasi-judicial decisions of boards or agencies in local governments, including those defined in paragraphs (1.1) and (1.2) of Code Section 36-66-3" to the list of matters requiring a discretionary application. And it amended OCGA § 36-66-3 paragraphs (1.1) and (1.2) to apparently exclude "zoning" decisions from those "quasi-judicial decisions." These changes get closer to the statutory construction of OCGA § 5-6-35(a) that was at the heart of our decision in *Diversified Holdings*. But they do not abrogate our holding there.

First, they do not alter the "[a]ppeals from decisions of the

_____

[3] Indeed, it is not clear what work this amendment to the statute accomplished, as "final judgments" already are exempt generally from the interlocutory application procedures per OCGA § 5-6-34(a)(1).

11

superior courts reviewing decisions of … state and local administrative agencies" language that we construed in *Diversified Holdings* as itself requiring appeals like this one to come by application. On its face, the 2025 amendment to OCGA § 5-6-35(a)(1) merely *adds* a new category of orders that require a discretionary application. It therefore is difficult to see how this could have abrogated our conclusion that *other* language in OCGA § 5-6-35(a)(1) that *remains* in the statute requires a discretionary application in appeals like this one.

To the extent that the new statutory language, by referring to OCGA § 36-66-3 paragraphs (1.1) and (1.2), does not include decisions "enumerated [in OCGA § 36-66-3] as a zoning decision" in the category of those decisions reviewing "quasi-judicial decisions of boards or agencies in local governments" that require a discretionary application to appeal, that does not alter our determination that boards of commissioners are acting as "local administrative agencies" when they deny a rezoning application.

Nor does it alter our determination that such an action is a "decision" within the meaning of OCGA § 5-6-35(a)(1). To be sure, our construction of that language in *Diversified Holdings* was based in part on that language's statutory context, specifically the other terms of OCGA § 5-6-35(a)(1). But the addition of the phrase "quasi-judicial decisions of boards or agencies in local governments" to OCGA § 5-6-35(a)(1) in 2025 does not alter that construction of "decision" as referring to adjudicative determinations, not legislative ones. If anything, it strengthens that construction, as we have equated "adjudicative" with "quasi-judicial." See *Diversified Holdings*, 302 Ga. at 600–01. And it does not change our understanding that adjudicative determinations are those that are "immediate in application, specific in application, and commonly involve an assessment of

facts about the parties and their activities, businesses, and properties." Id. at 601 (quoting *Keystone Knights*, 299 Ga. at 401). In short, although the legislature excluded certain "zoning decisions" from those "quasi-judicial decisions of boards or agencies of local governments" for which a discretionary application is required for judicial review beyond the superior court level, see OCGA §§ 5-6-35(a)(1), 36-66-3(1.2), that did nothing to alter the essential characteristics of the sort of decision at issue here. Those characteristics make that decision an "individualized application of law to facts and circumstances that constitutes an adjudicative decision" and thus a "decision" of a "local administrative agenc[y]" that requires an application. *Diversified Holdings*, 302 Ga. at 603. Moreover, if the legislature in fact had wanted to except certain decisions from the application requirement, it could have said so simply by adding to OCGA § 5-6-35(a)(1) a phrase such as "except for zoning decisions" as elsewhere defined. Instead, the legislature *added a new category of appeals* that also require an application; that is not the way to make an exception to an existing category.

Although the Appellants generally criticize *Diversified Holdings* on various grounds, they do not ask us to overrule it, let alone make an argument under the factors we consider in deciding whether to discard or retain a prior decision under the doctrine of stare decisis. Instead, they rest on the argument that it was legislatively abrogated. We are unpersuaded by the Appellants' argument of legislative abrogation, and we otherwise decline to reconsider our unabrogated precedent. In short, in *Diversified Holdings* we held that appeals such as this are "[a]ppeals from decisions of the superior courts reviewing decisions of … local administrative agencies" within the meaning of those terms in OCGA § 5-6-35(a)(1), such that a discretionary application is required by that statute. The statutory changes on

13

which the Appellants rely do not alter that statutory language or our construction of it. Because under that precedent the Appellants needed to follow the discretionary application procedures of OCGA § 5-6-35, and because they failed to do so, this appeal is dismissed.

*Appeal dismissed. All the Justices concur.*

BETHEL, Justice, concurring.

I concur with the judgment of the Court holding that, even in light of the recent amendments to the Zoning Procedures Law and the Appellate Practice Act, a party seeking to appeal a superior court's decision affirming a local zoning board's denial of a rezoning request must follow the discretionary application procedures of OCGA § 5-6-35. It may well be that the General Assembly, through that collection of amendments, intended to provide for a direct appeal in this type of case. But, as the Court carefully explains, the statutory text ultimately enacted by that body does not do so. Piecemeal amendments to a complex, interconnected system of statutory and decisional law often create more confusion where the goal is to have none. And despite the efforts of the parties and their counsel to navigate this tangled web of statutes and decisional law (which can be less than harmonious) and make their best guess as to the correct procedural path to follow to secure a decision on the merits, they nevertheless find themselves staring down a dismissal. This is the sort of legal maze where lawyers earn money and lose friends. Procedure need not and, indeed, should not be this complicated.

Landowners and local governments deserve clarity and certainty in their quest for appellate review. If, as Appellants here urge, the General Assembly intended to provide for a direct appeal in this type of case, then the General Assembly can certainly do so. And if that body chooses to clear a path within the Code to a direct appeal in this type of case, it is this jurist's view that the General Assembly ought to work with practitioners to review the full procedural landscape of zoning and land use law to eliminate any lurking hurdles. Of course, I would be remiss not to point out that any changes in the appeal process should take into account the impact of an increased workload for our appellate

15

courts that could result from eliminating the currently required discretionary application.

I am authorized to state that Justice LaGrua joins in this concurrence.