301 Ga. 635
FINAL COPY

S16G1703.  SCHUMACHER et al. v. CITY OF ROSWELL.

PETERSON, Justice.

The Roswell City Council enacted a new Unified Development Code (the "Code") to govern land use issues; the Code included a zoning map. Several Roswell property owners filed a lawsuit in superior court challenging the process by which the City Council enacted the Code. When the superior court ruled against the property owners, they filed a direct appeal. The Court of Appeals dismissed their direct appeal, concluding that their lawsuit was a "zoning case" under our decisions in Trend Dev. Corp. v. Douglas County, 259 Ga. 425, 425-426 (1) (383 SE2d 123) (1989), and O S Advertising Co. of Ga. v. Rubin, 267 Ga. 723 (482 SE2d 295) (1997) ("Rubin"), and thus required an application for discretionary appeal under OCGA § 5-6-35 (a) (1). But a stand-alone lawsuit challenging an ordinance as facially invalid — unconnected to any individualized determination about a particular property — is not a "zoning case" under Trend and Rubin and does not require an application under OCGA

§ 5-6-35. Accordingly, we reverse.

As alleged in their amended complaint, Eric Schumacher and Mike Nyden ("Plaintiffs") are citizens and taxpayers of the City of Roswell ("City") and own residential property there.[1] In February 2014, after conducting two public meetings, the Council of the City of Roswell ("City Council") approved a new zoning ordinance — the Code — and a new zoning map. The Code substantially replaced the City's existing zoning ordinance.

As detailed in meeting minutes attached as an exhibit to the answer to the amended complaint, Plaintiff Schumacher had attended and participated in the first public meeting, voicing his concerns about the proposed Code. In particular, he expressed his concerns about density and the public's ability to understand the proposal. At the second public meeting, a letter from Schumacher's counsel was read into the record. The letter argued that the City had not complied with state statutory procedures for adoption of a new zoning code. Among other things, the letter argued that the City had violated the law by inaccurately telling the public that the proposal would not change existing property rights. In neither meeting did Schumacher or his counsel address any

_____

[1] A third plaintiff named in the complaint has not filed an appearance in the appeal.

issue with the zoning of any particular parcel of property.

Following adoption of the Code, Plaintiffs filed suit against the City in the Superior Court of Fulton County.[2] The complaint, as amended, challenged the manner in which the City Council had approved the Code as contrary to law for a variety of reasons. Plaintiffs also alleged that the Code adversely affected their property. They sought a declaratory judgment that the Code was illegally enacted and, therefore, void and unenforceable, and an injunction prohibiting its enforcement, as well as attorney fees and costs.

The City denied Plaintiffs' allegations, and attached and incorporated by reference to its answer copies of the Code, the new zoning map, and the minutes of the two City Council meetings where the Code and map were discussed and approved. The City also filed a motion for judgment on the pleadings, seeking dismissal of all of Plaintiffs' claims. Plaintiffs opposed the City's motion and moved for an interlocutory injunction to prohibit enforcement of the Code during the pendency of the litigation. Following a hearing, the superior court granted the City's motion for judgment on the pleadings as to all of Plaintiffs'

---

[2] The original complaint named the Mayor of Roswell and City Council members as additional defendants, but they were not named as defendants in the Plaintiffs' amended complaint.

claims and denied as moot Plaintiffs' motion for an interlocutory injunction.

Plaintiffs filed a direct appeal of the adverse ruling, challenging only the

dismissal of some of their claims against the ordinance. The City moved to

dismiss Plaintiffs' direct appeal for lack of jurisdiction, arguing that Plaintiffs

were required to comply with the application procedures for discretionary

appeal. The Court of Appeals agreed and dismissed the direct appeal.

Schumacher v. City of Roswell, 337 Ga. App. 268 (787 SE2d 254) (2016). We

granted certiorari.

1. *The enactment of the Code was not a "decision" of an "administrative*
 *agenc[y]" under OCGA § 5-6-35 (a) (1).*

We have advised litigants that they must "review the discretionary

application statute to see if it covers the underlying subject matter of the appeal.

If it does, then the party must file an application for appeal as provided under

OCGA § 5-6-35." Rebich v. Miles, 264 Ga. 467, 469 (448 SE2d 192) (1994).

As relevant here, OCGA § 5-6-35 (a) (1) requires an application for "Appeals

from decisions of the superior courts reviewing decisions of . . . state and local

administrative agencies." The statutory question presented in this case is

whether a city council's adoption of a new zoning code is the "decision" of a

3

"local administrative agenc[y]."

Our case law makes clear that an act of an administrative agency is a "decision" within the meaning of this statute only when it is a determination of an "adjudicative nature." See State of Ga. v. Intl. Keystone Knights of the Ku Klux Klan, Inc., 299 Ga. 392, 402 (4) (a) (788 SE2d 455) (2016) (punctuation omitted). We have noted that our opinions draw a distinction between determinations of an adjudicative nature which fall within the meaning of the term "decision" as used in OCGA § 5-6-35 and "those that are legislative or quintessentially executive in nature." Id. at 403 (4) (a). While requiring applications for discretionary review in cases where an administrative agency made a determination of an adjudicative nature, "[w]e consistently have refused . . . to require applications in cases concerning executive determinations and those involving rulemaking or other determinations of a legislative nature." Id. at 403-404 (4) (a).

The conclusion that enactment of a new development code is an exercise of legislative power — and thus not an adjudicative "decision" under the statute — is compelled by our case law:

Administrative determinations of a legislative nature are

4

prospective in application, general in application, and often marked by a general factual inquiry that is not specific to the unique character, activities or circumstances of any particular person. Determinations of an adjudicative nature, on the other hand, are immediate in application, specific in application, and commonly involve an assessment of facts about the parties and their activities, businesses, and properties.

Id. at 401 (4) (a) (citations and punctuation omitted). Nothing about the adoption of a new development code fits within this definition of "decision."

The lawsuit filed in superior court challenged only one action: the Roswell City Council's adoption of the Code. The suit seeks no individualized zoning-related relief. Nothing in the adoption of the Code focused on "the unique character, activities or circumstances of any particular person," or involved an "assessment of facts about the parties and their activities, businesses, and properties." There was no individualized determination by any level of city government. The adoption of the Code was prospective in nature, as the adopting City ordinance provided that the Code was to take effect after June 1, 2014, and was to apply for the entire City. Thus, the adoption of the Code was not a "decision" as we have interpreted that statutory term.

Moreover, the City Council was not acting as an "administrative agenc[y]." The enactment of ordinances is at the core of the City Council's

5

legislative functions. Indeed, the City argued below that the defendant City Council members should be dismissed from the suit by virtue of their legislative immunity because they had "engaged in a legislative function" in adopting the Code. OCGA 5-6-35 (a) (1) requires both a "decision" and an "administrative agenc[y]"; this case has neither, and thus the statute does not require an application for discretionary appeal.

2.     Trend *and* Rubin *do not apply here.*

Trend and Rubin do not require a different result. Trend and Rubin both announced that applications are required to appeal in "zoning cases." Rubin, 267 Ga. at 723 ("Adhering to our decision in Trend . . . we reiterate that all appeals in zoning cases require an application"); Trend, 259 Ga. at 425 (1) ("The Court takes this opportunity to advise bench and bar that appeals in zoning cases will henceforth require an application."). But a careful reading of those cases shows that they can be reconciled with OCGA § 5-6-35 (a) (1) because a "zoning case" is a case involving a "decision" by an "administrative agenc[y]" dealing with the zoning or allowed use of a particular parcel of land. No such decision is at issue here.

In Trend, an appeal was taken from the denial of a landowner's petition

6

to rezone certain property. That's the sort of individualized determination that we would generally consider a "decision" under the statute. See <u>Keystone Knights</u>, 299 Ga. at 401 (4) (a). The agency making the decision — the county commission — did not qualify as an "administrative agenc[y]" at the time <u>Trend</u> was decided.  See <u>Geron v. Calibre Cos.</u>, 250 Ga. 213, 216 (1) (296 SE2d 602) (1982) (holding "a county commission is not an administrative agency" for purposes of OCGA § 5-6-35 (a) (1)).  Seven years after <u>Trend</u>, however, we explicitly overruled <u>Geron</u> on this point, holding that, when performing a function that is "the equivalent of the function of an administrative agency," boards of commissioners are administrative agencies under OCGA § 5-6-35 (a) (1). See <u>Swafford v. Dade County Bd. of Commrs.</u>, 266 Ga. 646, 647 (1) (469 SE2d 666) (1996).  Because <u>Trend</u> involved a "decision" of what we now understand to have been an "administrative agenc[y]" — and this case did not — <u>Trend</u> does not compel the filing of a discretionary application here.

In <u>Rubin</u>, the agency in question was the City of Atlanta Board of Zoning Adjustment, likely an "administrative agenc[y]." The appeal was taken in the superior court from the denial of a landowner's application for a sign ordinance variance, and then appealed to this Court. 267 Ga. at 724. As in <u>Trend</u>, that sort

7

of determination is generally considered a "decision." Id. In Rubin, the landowner added to the variance request a claim that the ordinance was unconstitutional. Notwithstanding that the issue on appeal was the constitutional claim, however, Rubin still involved an appeal from an administrative agency's denial of an individual variance request. Here, in contrast, Plaintiffs make a stand-alone challenge to a legislative act by a legislative body; there is no claim regarding the zoning of any particular parcel of land, no decision regarding any parcel of land, and no appeal from any such decision. This case is not a "zoning case" under Trend or Rubin.[3]

Trend announced that "appeals in zoning cases" would "henceforth" have to be brought by application under the statute. Trend, 259 Ga. at 425 (1). But the context of Trend and Rubin makes clear that when those decisions refer to "zoning cases," they mean cases involving individualized determinations by an "administrative agenc[y]" as to the zoning or permitted use of particular parcels

---

[3] Notwithstanding the dissent's extended discussion of stare decisis, today we decide only that Trend and Rubin do not apply here. Whether they should be reconsidered in an appropriate case is another question for another day.

8

of land.[4]  The City asserts in its brief before us that the adoption of the Code and new map for the entire City "incidentally[ ] rezoned Appellants' property." Even assuming this is correct, however,[5] Plaintiffs assert no claim and appeal from no individualized decision to change the zoning of any particular property or to grant or deny a request for a variance as to any particular property.  Rather, they make various allegations about the process by which the Code was adopted — including that the City falsely told the public that the Code would not affect residential property owners and would not increase housing density — then baldly allege that the Code "adversely affects" their property.  Although Plaintiffs thus allege — as they must to have standing — that they were harmed by the City's actions, those allegations do not convert their lawsuit into a "zoning case" as we used that term in Trend and Rubin.

---

[4] If the City Council's adoption of a new zoning code were the "decision" of a "local administrative agenc[y]," the fact that Plaintiffs did not appeal from that decision and instead filed a stand-alone lawsuit challenging the decision would not entitle them to a direct appeal; the statute may not be so easily evaded. See Hamryka v. City of Dawsonville, 291 Ga. 124, 125 (2) (728 SE2d 197) (2012).

[5] It is not clear exactly what the City means by saying Plaintiffs' property was "rezoned," i.e., to what extent the Code changed what uses of Plaintiffs' property were permissible. The City does not point to anything in the voluminous attachments to its answer that addresses that question, and the amended complaint does not allege that Plaintiffs' property was "rezoned."

We acknowledge there is one case like this one in which we have found an application to be required. In Outdoor West, Inc. of Ga. v. Coweta County, 270 Ga. 527 (512 SE2d 604) (1999), we dismissed by order a direct appeal for failure to file an application. The order said, in full:

> As this is an appeal from a decision in a zoning case, appeal to this Court is by the application procedures of OCGA § 5-6-35. O S Advertising Co. v. Rubin, 267 Ga. 723, 724 (1) (482 SE2d 295) (1997); Trend Dev. Corp. v. Douglas County, 259 Ga. 425 (383 SE2d 123) (1989). In fact, Outdoor West, Inc., has, prior to this direct appeal, filed such an application (Outdoor West, Inc. of Georgia v. Coweta County, Georgia, S98D1665). The application was denied by this Court on August 14, 1998. Accordingly, this direct appeal is dismissed.

Id. at 527. Two justices dissented, explained that what the majority believed was a "zoning case" was actually a stand-alone constitutional challenge to a sign ordinance, and concluded the direct appeal was appropriate. See id. at 527-528 (Carley, J., dissenting, joined by Hunstein, J.) (noting absence of any evidence that there had been any "final administrative decision or that Outdoor West ha[d] prosecuted any appeal therefrom by any method").

Outdoor West is a clear outlier; we have refused to require an application in other zoning-related cases that were not appealing decisions of administrative agencies. Compare Mid-Ga. Envtl. Mgmt. Group, LLLP v. Meriwether County,

10

277 Ga. 670, 671-672 (1) (594 SE2d 344) (2004) (citing Trend rule and concluding, because no zoning decision had been made, that appellant had a right to a direct appeal — and that Court properly dismissed discretionary application — to seek review of denial of mandamus action to compel county to issue a verification letter and a declaratory judgment that county's zoning ordinance was not validly enacted), with id. at 676 (Hines, J., dissenting) ("[A]ll zoning decisions, whether determining the initial zoning classification or otherwise, are administrative. This Court has declared this principle to be a 'bright-line' rule. [citing Rubin] Today, the majority erases this rule."); see also King v. City of Bainbridge, 272 Ga. 427, 428 (1) (531 SE2d 350) (2000) (unanimously denying appellee's motion to dismiss appeal pursuant to Rubin, because the order being appealed from (the grant of an injunction to enjoin appellant from violating city's zoning ordinance) did not involve the review of the decision of a local administrative agency); Harrell v. Little Pup Dev. & Constr., 269 Ga. 143, 144 (1) (498 SE2d 251) (1998) (citing Rubin and unanimously concluding that direct appeal was proper; case did not involve superior court review of an administrative decision where appellants brought action for injunctive relief to enforce rezoning conditions imposed against

11

neighboring landowner and "did not join their action for injunctive relief with any appeal from an adverse administrative decision"). Moreover, but for the issuance of a dissent, <u>Outdoor West</u> would be an unpublished order without precedential value. See <u>Spurlock v. Dept. of Human Resources</u>, 286 Ga. 512, 514 (2) (690 SE2d 378) (2010) (unpublished orders serve as neither binding nor physical precedent). We do not find <u>Outdoor West</u> controlling, and expressly disapprove it to the extent inconsistent with our holding today.

We reverse the decision of the Court of Appeals and remand for proceedings consistent with this opinion.

<u>Judgment reversed. Melton, P. J., Hunstein, Nahmias, Blackwell, and Grant, JJ., concur. Hines, C. J., Benham, J., and Judge Verda M. Colvin dissent. Boggs, J., disqualified.</u>

GRANT, Justice, concurring.

I join the Court's opinion in full, including its conclusion that the only issue decided today is that a freestanding challenge to the facial validity of a zoning ordinance, unaccompanied by any complaint regarding an individualized

12

determination impacting a particular parcel of land, does not challenge a "decision" of an "administrative agency" under OCGA § 5-6-35 (a) (1). This decision is consistent with the text of the statute, and accordingly with our responsibility as judges to apply even complicated statutes as they are written by the General Assembly.

That said, I understand and appreciate the concerns of the dissenting opinion regarding the lack of clarity in appellate procedures. More often than not, one would expect a close adherence to the textual demands of a statute to lead to greater clarity in the law; an attorney should be able to turn to the statute in the codebook and determine whether a direct appeal or an application is appropriate in a given case. That ideal is not necessarily met here. But the dissent's approach does not add clarity either, seeking to extend a rationale that we have already deemed to have "fallacies." See *O S Advertising Co. of Ga. v. Rubin*, 267 Ga. 723, 725 (2) (482 SE2d 295) (1997).

As illustrated by the numerous divided decisions of this Court over the years, this statute has never been a source of great clarity; even the members of this Court have been unable to agree on which cases fall within the parameters of OCGA § 5-6-35 (a) (1). See, e.g., *Fulton County v. Congregation of Anshei*

*Chesed*, 275 Ga. 856, 857 (1) (572 SE2d 530) (2002) (after first holding that direct appeal was proper for appellants who had filed application for discretionary review, reverting to treat appellate filings as if they had been filed pursuant to an application for discretionary review, and granting the application); *Powell v. City of Snellville*, 275 Ga. 207, 208-210 (1), (2) (563 SE2d 860) (2002) (initially dismissing appellant's discretionary applications because appellant had the right to direct review, but concluding after reviewing full record that the direct appeals should be dismissed and that applications were in fact required); *Dunlap v. City of Atlanta*, 272 Ga. 523, 524, 525 (531 SE2d 702) (2000) (Majority: "It is axiomatic that an appeal from a superior court's review of an administrative decision must be made through an application for appeal.") (Dissent: "[I]t is undisputed that the Board made no decision in this case. Dunlap has bypassed administrative review entirely and, thus, OCGA § 5-6-35 (a) (1) did not require him to comply with discretionary appeal procedures.").

Even in the context of zoning, which has purportedly been the subject of a "bright line rule," this Court has not been able to agree on which cases require an application. See maj. op. at p. 640 (citing *Mid-Ga. Envtl. Mgmt. Group v. Meriwether County*, 277 Ga. 670, 671-672 (1), 675-676 (5), (6) (594 SE2d 344)

(2004); *King v. City of Bainbridge*, 272 Ga. 427, 428 (1) (531 SE2d 350) (2000); *Outdoor West, Inc. of Ga. v. Coweta County*, 270 Ga. 527, 527-528 (512 SE2d 604) (1999); *Harrell v. Little Pup Dev. & Constr.*, 269 Ga. 143, 144 (498 SE2d 251) (1998)). For example, in *Sprayberry v. Dougherty County*, 273 Ga. 503, 505-507 (543 SE2d 29) (2001), this Court concluded over dissent that because appellants had not filed an appeal to the superior court seeking review of an administrative decision on zoning, the order in question was directly appealable under OCGA § 5-6-34 (a). The following year, the Court overruled *Sprayberry* in part, explaining that "to the extent *Sprayberry* holds that a litigant is not seeking 'review' of an administrative decision by filing a mandamus action in superior court to attack or defend that decision, *Sprayberry* is hereby overruled." *Ferguson v. Composite State Bd. of Medical Examiners*, 275 Ga. 255, 258 (2) (564 SE2d 715) (2002). The *Ferguson* decision also included a special concurrence arguing that *Sprayberry* should not be overruled at all, and another concurrence arguing that *Sprayberry* should be overruled in its entirety. See *id*. at 258 (Carley, J., concurring specially); id. at 260 (Hines, J., concurring). This is not the stuff of bright lines.

We recently attempted to bring some needed clarity to this interpretive enterprise by explaining in *Keystone Knights* that decisions can be "adjudicative," "legislative," or "executive," and that an application is required to seek review of "adjudicative" decisions by administrative agencies. *State of Ga. v. Intl. Keystone Knights of the Ku Klux Klan, Inc.*, 299 Ga. 392, 400-406 (4) (a) (788 SE2d 455) (2016). That decision was a valuable step in asserting order over our jurisprudence in this area, but it still left much to be divined by practicing attorneys.[6] Of course, in fairness to *Keystone Knights*, the complexity of the analysis required under any approach that takes statutory language seriously counsels in favor of a legislative solution. What, for example, is a "decision"? Or an "administrative agency"? And what is the answer when a case raises claims regarding legislative, executive, and adjudicative decisions by a government entity acting in different capacities with respect to each of the

---

[6] I have my own doubts about whether *Keystone Knights* may have read "adjudicative" too broadly and "executive" too narrowly, as not every individualized decision is truly adjudicative, no matter how specific or immediate. But that particular issue is not relevant to the outcome here, and it may also be that Keystone Knights leaves sufficient room for the category of "executive" decisions as more cases come before us.

3

"decisions"? The statute invites rather than answers these questions, and we can only do so much to simplify while also remaining faithful to its text.[7]

Accordingly, the General Assembly may wish to clarify the scope of the matters that are subject to the discretionary appeal process. Until then, the best path forward — as remarkable as this is — may well be to follow the advice of two leading Georgia appellate treatises and file a discretionary application in every instance where there is any doubt. See McFadden, Brewer & Sheppard, *Ga. Appellate Practice with Forms*, § 8:12, p. 245 (2016-2017 ed.) ("The uncertainty created by these decisions, while seemingly academic, becomes less so in the context of the principle that the discretionary application requirements apply even within an area specifically referenced in the direct appeal provisions, and the Supreme Court's reminders that the discretionary application process is intended to reduce its caseload. In that situation, the 'tie' may not go to the direct-appeal runner, and either a discretionary application or an application together with a direct appeal would be the wiser course."); Michael B. Terry, *Georgia Appeals: Practice and Procedure with Forms* 122 (2015) ("when in

---

[7] Nor do these questions address the additional layers of complexity that come about in cases that also require some application of OCGA § 5-6-34. See, e.g., *Ferguson*, 275 Ga. at 256-257; *Rebich v. Miles*, 264 Ga. 467, 468 (448 SE2d 192) (1994).

4

doubt consider exercising an 'abundance of caution,' such as by filing both a notice of appeal and a discretionary application").

In fact, the more efficient path would be to file only an application, because this Court has made clear that when an application is filed, but a direct appeal is permitted, we will grant the application under OCGA § 5-6-35 (j). See *Cardinal Robotics, Inc. v. Moody*, 287 Ga. 18, 20 n.3 (694 SE2d 346) (2010). In contrast, where an application for discretionary appeal is required, but is not filed, this Court does not have jurisdiction to consider the appeal, and the case will be dismissed. See *Dunlap*, 272 Ga. at 524. Where a litigant is in the quite understandable position of not being certain whether an application for appeal is required, the safer path is the one through the requirements of OCGA § 5-6-35 (a) (1).

I am authorized to state that Justice Nahmias joins in this concurrence.

HINES, Chief Justice, dissenting.

I respectfully dissent because the opinion of the majority needlessly upturns the well-established, well-founded, and absolutely clear Georgia precedent regarding the appellate procedure in zoning cases to regress to a state of the law which was, and will now again be, abstruse and uncertain.

As noted by the Court of Appeals, the starting point in the determination of the appropriate procedure for pursuing an appeal in the Court of Appeals, and indeed in this Court, is the examination of OCGA § 5-6-34, which outlines lower court judgments and orders that parties may appeal directly, and OCGA § 5-6-35, which prescribes the cases in which parties must file an application for discretionary appeal. *Rebich v. Miles*, 264 Ga. 467, 468 (448 SE2d 192) (1994). If a direct appeal of a judgment is not authorized under OCGA § 5-6-34 because the appealing party was required to pursue the discretionary application process set forth in OCGA § 5-6-35, the appellate court does not have jurisdiction to hear the merits of the appeal, and therefore, must dismiss it. Id. This comports with the primary legislative purpose of the passage of OCGA § 5-6-35, which is to aid the appellate courts in managing massive caseloads by giving them the discretion not to entertain an appeal in circumstances in which a direct appeal is not the optimal use of the appellate forum. Id. And, as was

6

stressed in *Rebich*, generally *the underlying subject matter of the appeal controls* as to whether the procedure for discretionary appeal under OCGA § 5-6-35 must be followed. Id.

In this case, the issue is straightforward — whether the Plaintiffs were required by OCGA§ 5-6-35 (a) (1) to file an application for discretionary appeal, and therefore, were not entitled to a direct appeal under OCGA § 5-6-34. In relevant part, OCGA§ 5-6-35 (a) (1) requires an application to appeal from "decisions of superior courts reviewing decisions of . . . local administrative agencies." In *Trend Dev. Corp. v. Douglas County*, 259 Ga. 425 (383 SE2d 123) (1989), this Court determined that appeals in *all zoning cases*, whether to this Court or the Court of Appeals would require a discretionary application,[8] id. at 426 (1), reasoning that such appeals were "from the decision of a court reviewing a decision of an administrative agency within the meaning of OCGA § 5-6-35 (a) (1)."[9] Id. *Trend* involved an as-applied constitutional challenge

---

[8]Although the zoning appeal in *Trend* itself was not dismissed, the Court used it as the vehicle to announce the rule of appellate procedure to be followed in all future zoning cases as of the date *Trend* appeared in the Georgia Reports Advance Sheets.

[9] The opinion also noted that in *Ross v. Mullis Tree Service*, 183 Ga. App. 627, 628 (360 SE2d 288) (1987), the Court of Appeals held that "'OCGA § 5-6-35 (a) (1) is applicable to appeals from decisions of the superior courts reviewing decisions of local zoning tribunals. . . .'" Id.

regarding the landowner's property, not a facial due process challenge like the one presented in this case.

However, subsequently, in *O S Advertising Co. of Ga. v. Rubin*, 267 Ga. 723 (482 SE2d 295) (1997), the Court was squarely faced with the issue of whether one who raises a facial challenge to a zoning ordinance should have a right of direct appeal. In such challenges the administrative agency cannot and does not adjudicate the claim. Nevertheless, although this Court expressly acknowledged that there were some "fallacies in the rationale in *Trend*," we declined to create an exception to *Trend* in the case of such a challenge to a zoning ordinance. Id. at 725 (2). We explained that the

> proposed distinction would create confusion concerning the proper procedure to follow in appeals in zoning cases without providing property owners or zoning authorities any additional review of their substantive claims. Moreover, it would permit litigants to control the appellate procedure, contrary to legislative intent, by raising a facial challenge to every zoning ordinance. . . . More problematic, it would impose on both the parties and this Court the difficult task of determining whether the superior court acted in its role as a "trial court" or as a "reviewing court" in each zoning case. As a result, parties would file both an application and a direct appeal to avoid the risk of reaching a conclusion different from this Court and thus losing their right to any appellate review. Because

> the decision in *Trend* provides a clear, efficient, and fair rule, we follow it here and dismiss this direct appeal.

*Id.* See also *Fulton County v. Congregation of Anshei Chesed*, 275 Ga. 856, 857 (1) (572 SE2d 530) (2002), disapproved on other grounds by *City of Cumming v. Flowers*, 300 Ga. 820, 832 (6) (a) (797 SE2d 846) (2017).

Contrary to the very premise of the majority, *Rubin* with its application of *Trend* is direct and controlling precedent in this appeal as a matter of fact and of law. First, although the underlying case in *Rubin* involved an administrative determination regarding a variance, the sole issue on appeal was a facial challenge to the subject zoning ordinance. What is more, even if the *Rubin* appeal is viewed as one involving both an administrative decision and a facial attack, this Court's dismissal of the direct appeal and endorsement of the procedure for discretionary appeal implicitly confirms that *Rubin* controls the present case; this is so because if the facial challenge would have conferred a right of direct appeal then the administrative decision would also have been a matter of direct appeal in accordance with the mandate of OCGA § 5-6-34 (d).[10]

---

[10] OCGA § 5-6-34 (d) provides:

> Where an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and

3

See *Johnson v. State*, 300 Ga. 252, 257 (3) (794 SE2d 60) (2016). Indeed, the majority's procedural premise that the route to appeal is governed by everything raised in the litigation below rather than the issue on appeal, i.e., that the presence of a variance or other administrative zoning ruling guides the appellate procedure in regard to an attendant facial challenge, not only runs afoul of OCGA § 5-6-34 (d) but is directly contrary to our precedent; such precedent dictates that we look only to the issues on appeal to determine whether the appeal is one of right or discretion, and issues, otherwise a matter of review by discretion may be reviewed on direct appeal when appealed as part of a judgment that is directly appealable. *Eickhoff v. Eickhoff*, 263 Ga. 498, 500 (1) (435 SE2d 914) (1993), overruled on other grounds by *Lee v. Green Land Co.*, 272 Ga. 107, 108 (527 SE2d 204) (2000). But, perhaps even more

determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere. For purposes of review by the appellate court, one or more judgments, rulings, or orders by the trial court held to be erroneous on appeal shall not be deemed to have rendered all subsequent proceedings nugatory; but the appellate court shall in all cases review all judgments, rulings, or orders raised on appeal which may affect the proceedings below and which were rendered subsequent to the first judgment, ruling, or order held erroneous. Nothing in this subsection shall require the appellate court to pass upon questions which are rendered moot.

4

significantly, the holding in *Rubin* was broad and unequivocal: "Adhering to our decision in *Trend Development Corp. v. Douglas County*, we reiterate that *all appeals in zoning cases require an application* and dismiss this direct appeal for lack of jurisdiction." Id. at 724. (Footnote omitted; emphasis supplied). This Court further stated that the holding in *Trend* "established a bright-line rule for both litigants and the appellate courts. *If the underlying subject-matter is zoning*, an application for discretionary appeal must be filed." Id. at 724 (1) (Emphasis supplied.) The proper characterization of this litigation is unquestionably that it is a *zoning case*; therefore, it is controlled by *Trend* and *Rubin.* The adoption of the ordinance in question in some measure *rezoned* Plaintiffs' parcels of real property, allegedly to their detriment. Thus, this is no less a zoning matter affecting particular properties than an adverse decision on a request for a variance. Indeed, it arguably is a harsher particularized zoning determination in that it completely changes the zoning of the properties in question whereas the denial of a variance leaves the applicable zoning in place. If these specific Plaintiffs and their properties had not allegedly sustained harm from the new zoning code then they would not have standing to challenge it in the first place. *Oasis Goodtime Emporium I, Inc. v. City of Doraville*, 297 Ga.

5

513, 531 (5) (773 SE2d 728) (2015). The fact that they did so by a collateral attack on the zoning ordinance does not change the applicability of *Trend* and *Rubin*; we have made plain that OCGA § 5-6-35 (a) (1) procedurally governs not only cases in which there is a direct appeal to the superior court from the local government's zoning decision, but also where there is a collateral attack on the zoning decision by directly filing an action in superior court for relief. See *Hamryka v. City of Dawsonville*, 291 Ga. 124, 125 (2) (728 SE2d 197) (2012).

While *Trend* has certainly produced a significant and consistent body of law in regard to appellate procedure in zoning cases, as noted in *Rubin*, the briefly-stated rationale of *Trend,* i.e., that all zoning cases would require discretionary appeal because they were within the ambit of OCGA § 5-6-35 (a) (1), is problematic. This is especially apparent in the case of a facial due process challenge to a zoning ordinance, where the local administrative agency does not adjudicate the due process question. The express terms of OCGA § 5-6-35 (a) (1), contemplate that there be a "decision" of a state or local "administrative agency," i.e., a lower tribunal, that is "reviewed" by the superior court.

This approach in zoning cases does stand in contrast to our approach in non-zoning cases. In non-zoning cases, we have said that a "decision" of an

6

administrative agency within the meaning of OCGA § 5-6-35 (a) (1) is one that is adjudicatory in nature, which need not be characterized by formal adjudicative procedures.  See *State of Ga. v. Intl.  Keystone Knights of the Ku Klux Klan,* 299 Ga. 392, 399-407 (4) (a) and n. 22  (788 SE2d 455) (2016) (compiling cases indicating that "[t]he decisions in which this Court has actually applied OCGA § 5-6-35 (a) (1) to require applications for discretionary review in cases involving administrative agencies almost uniformly appear to have concerned agency determinations of an adjudicative nature").  We noted that

> [w]hen addressing agency determinations that are not quintessentially executive, the courts routinely have drawn a distinction between determinations that are legislative in nature, on the one hand, and those that are adjudicative in nature, on the other. Although the line between legislation and adjudication is not always easy to draw, there seems to be some agreement about the defining characteristics of these two sorts of administrative determinations. Administrative determinations of a legislative nature are prospective in application, . . . and often marked by a general factual inquiry that is not specific to the unique character, activities or circumstances of any particular person. Determinations of an adjudicative nature, on the other hand, are immediate in application, specific in application, and commonly involve an assessment of facts about the parties and their activities, businesses, and properties.

7

Id. at 401 (4) (a) (citations and punctuation omitted). Thus, the determination of whether there has been a "decision" of an administrative agency for purposes of OCGA § 5-6-35 (a) (1) was analyzed in a manner not reflected in *Trend/Rubin*.[11] And thus, *Trend* and its progeny *Rubin* should be considered in light of the policy of stare decisis.

Certainly, the doctrine of stare decisis is an essential part of a well-ordered system of jurisprudence, inasmuch as in most cases, it is of "more practical utility to have the law settled and to let it remain so, than to open it up to new constructions." *Etkind v. Suarez*, 271 Ga. 352, 357 (5) (519 SE2d 210) (1999). However,

> [s]tare decisis is not an inexorable command; rather, it is a principle of policy and not a mechanical formula of adherence to the latest decision. . . . In considering whether to reexamine a prior erroneous holding, we must balance the importance of having the question decided against the importance of having it decided right. In doing so, we consider factors such as the antiquity of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning.

---

[11] We noted in *Keystone Knights* that many administrative decisions are executive in nature, and thus, would not fall under the provisions of OCGA § 5-6-35 (a) (1).

*Woodard v. State*, 296 Ga. 803, 812 (3) (b) (771 SE2d 362) (2015) (citations and emphasis omitted). See also *Flowers*, 300 Ga. at 820. Moreover, the respect for precedent is strongest in the case of statutory construction, where the legislative body is free to change this Court's interpretation of its legislation. *Hubbard v. United States*, 514 U. S. 695, 696 (115 SCt 1754, 131 LE2d 779) (1995).

The soundness of reasoning is of import in the analysis, but it is not necessarily determinative. *McKinney v. Pate*, 20 F3d 1550, 1565 n. 21 (11th Cir. 1994) (affirming that "'when [a] Court reexamines a prior holding, its judgment is customarily informed by a *series of prudential and pragmatic considerations* designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case'" (citation omitted; emphasis supplied)); *Hubbard v. United States*, supra at 716 (Scalia, J., concurring in part and concurring in the judgment) (explaining that courts must give reasons for ignoring stare decisis, "reasons that go beyond mere demonstration that the overruled opinion was wrong (otherwise the doctrine would be no doctrine at all)" (parenthetical in original)). Here, as we have acknowledged, *Trend*'s bare bones statement of

rationale premised upon OCGA § 5-6-35 (a) (1) has been called into question by a then majority of this Court. *Rubin*, supra at 725 (2). And, there is no further reasoning expressed in the opinion, sound or otherwise. However, again it is significant that the *Trend* rule helps implement the very purpose of the General Assembly in passing the discretionary appeal statute, i.e., promoting judicial management and economy. It alleviates confusion in the appellate process, and thereby benefits all concerned. Furthermore, it militates against specious claims by litigants in order to circumvent or control the appellate process.[12] Simply, regardless of the flawed statement of rationale in *Trend,* there is a sound policy for the decision in that it provides a clear, efficient, and eminently workable rule in zoning cases. See *Kimble v. Marvel Entertainment, LLC*, ___ U. S. ___ (135 SCt 2401, 192 LE2d 463) (2015) (stare decisis carries enhanced force when a decision interprets a statute, even when the decision relies on the policies and purposes animating the law).

---

[12] If a facial due process challenge to the applicable zoning ordinance was allowed to confer a right of direct appeal, this might prove incentive to add such a claim to otherwise routine zoning litigation, or to bypass the administrative process entirely and rely solely on such a facial challenge burdening both the trial and appellate courts with a matter more expeditiously resolved by the local zoning commission or board.

Admittedly, it is difficult to find the presence of reliance interests. Generally, reliance interests in the context of stare decisis refer to contract interests, property rights, and other substantive rights. *Lejeune v. McLaughlin*, 296 Ga. 291, 298 (2) (766 SE2d 803) (2014). That is plainly not the situation in the present case, as *Trend* and *Rubin* are decisions of appellate procedure. However, the remaining factors in the stare decisis analysis prove to be determinative here.

The ages of the decisions are significant in relationship to the resulting body of case law. *Trend* has now been the law of Georgia for nearly three decades, and consequently, has been cited as direct authority in numerous appellate decisions by this Court and the Court of Appeals, and has been highlighted in many secondary sources discussing Georgia jurisprudence. It has effectively functioned as the procedural gatekeeper in zoning cases, often determining the fate of untold parcels of real property. Its progeny *Rubin* has been the law for 20 years, and has served the same purposes. And as I have noted, the General Assembly, as the body enacting OCGA § 5-6-35 (a) (1), has for these decades been free to take legislative action in order to alter this Court's interpretation of its legislation. *Hubbard v. United States*, supra at 696. But,

11

tellingly it has not done so.  See *Kimble v. Marvel Entertainment*, 135 SCt at 2410.  *Trend* and *Rubin* have not been cast in doubt by any act of the General Assembly, and unquestionably they have become the well-settled law of this State.

But, most importantly in this situation is the factor of workability.  There can be little dispute that the bright line rule of *Trend* adhered to in *Rubin* has provided needed clarity and direction to the bench and bar in the all-too-often quagmire of appellate procedure.  It leaves no doubt for trial courts, practitioners, and indeed, litigants as to the proper procedure for an appellate challenge of a zoning issue, and therefore, avoids the pitfall of dismissal of a fatally-flawed appeal. The workability of *Trend* cannot credibly be questioned. And, neither can the significance of the factor of utility be in doubt because if a matter of appellate procedure proves unworkable, due to vagueness, confusion, complexity, or otherwise, then the stated rationale for the procedure, even if reasonable in theory, is of little import.  See Nahmias, J., concurring in *Allaben v. State*, 294 Ga. 315 (751 SE2d 802) (2013), overruled by *State v. Springer*, 297 Ga. 376 (774 SE2d 106) (2015) (in the context of stare decisis, workability can be the major concern). See also *Swift & Co. v. Wickham*, 382 U. S. 111, 116

(86 SCt 258, 15 LE2d 194) (1965) ("the mischievous consequences to litigants and courts alike from the perpetuation of an unworkable rule are too great").

Contrary to any claim that the workability of a precedent is not a reason for retaining it, the United States Supreme Court and this Court have held otherwise. In *Kimble v. Marvel Entertainment*, 135 SCt at 2411, the Supreme Court stated that nothing about the precedent under consideration had proved unworkable; that the decision was "simplicity itself to apply"; that its "ease of use" appeared "in still sharper relief when compared to [the] proposed alternative"; and that the more "elaborate inquiry" would produce higher litigation costs and unpredictable results. Id. The Court determined that it should not trade in a decision which was eminently workable for one with perhaps better legal reasoning but which was not as workable. Id. It concluded that "[o]nce again, then, the case for sticking with long-settled precedent grows stronger: Even the most usual reasons for abandoning stare decisis cut the other way here." Id.

This Court too has recently made plain that "the doctrine of stare decisis strongly counsels adherence to our longstanding, consistent, and *workable* precedents." *Savage v. State of Ga.*, 297 Ga. 627, 641 (5) (b) (774 SE2d 624)

13

(2015) (emphasis supplied). See also Nahmias, J., concurring in *PNC Bank, Nat. Assn. v. Smith*, 298 Ga. 818, 824 (785 SE2d 505) (2016) (the holding at issue "is a four-decade-old statutory precedent that created a workable rule . . . and thus it should be followed as a matter of stare decisis"); Nahmias, J., concurring in *Brown v. Crawford*, 289 Ga. 722, 725-726 (715 SE2d 132) (2011) (the precedent had "been law for over a decade," had been "applied in a number of cases," and "the clear procedural rule . . . is workable, . . . as it simply requires the [filing of] a discretionary application to appeal"; "'Stare decisis is an important principle that promotes the rule of law, particularly in the context of statutory interpretation, where our incorrect decisions are more easily corrected by the democratic process.'").

To regress to pre-*Trend* puts the litigants, the attorneys, and the courts in the untenable position of determining the proper characterization of every action by zoning commissions or zoning boards, who typically perform a mixture of administrative, quasi-judicial, and legislative functions. The discretionary appellate procedure unequivocally ruled as applicable in all zoning cases by *Trend* and its progeny has long proved to be a clear and workable system for

14

handling appeals in zoning cases, and this Court should not now stray from it.[13]

As we aptly noted in *Rubin*, the discretionary appeal procedure,

> does not deny a party in a zoning case the right to appellate review. It merely permits this Court to consider the appellant's enumerations of error in a streamlined process that [potentially] omits oral arguments and a written opinion.

Id. at 724 (1).

Here, the Plaintiffs' amended complaint seeking declaratory and injunctive relief challenged the City Council's zoning decision to approve the Unified Development Code ("UDC") and the new zoning map on due process and other grounds, and the Plaintiffs sought to have the UDC and map declared null and void and to prevent their enforcement. None of the Plaintiffs' requests for relief were independent of the City Council's decision to approve the UDC and the map, and none of the requests for relief could be granted or denied by the superior court without affirming, reversing, or in some manner rendering a judgment in regard to the City Council's zoning decisions. Under these circumstances, in which an appeal is taken from a judgment of a superior court reviewing a zoning decision, there should be no direct appeal. Plaintiffs' appeal

---

[13]The policy of *Trend/Rubin* has been applied only in the arena of zoning.

15

to the Court of Appeals was properly a matter of discretion under OCGA § 5-6-35, rather than one of right under OCGA § 5-6-34. Accordingly, the Court of Appeals correctly dismissed the plaintiff petitioners' direct appeal, and its judgment should be affirmed by this Court.

As Circuit Judge Vance observed in his dissent in *Gulf States Manufacturers, Inc. v. N.L.R.B.*, 598 F2d 896 (5th Cir. 1979), the opinion of the majority "supplants clarity with needless confusion. The end and purpose of this change are not apparent. If the objective is to advance the state of the law, I respectfully submit that it fails." Id. at 911.

I am authorized to state that Justice Benham and Judge Colvin join in this dissent.

Decided June 30, 2017.
Certiorari to the Court of Appeals of Georgia – 337 Ga. App. 268.
<u>John R. Monroe</u>, for appellants.

Freeman, Mathis & Gary, Dana K. Maine, Connor M. Bateman, for appellee.