**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 16, 2020**

# In the Court of Appeals of Georgia

A20A1320. CLAY v. DOUGLASVILLE-DOUGLAS COUNTY
     WATER AND SEWER AUTHORITY et al.

RICKMAN, Judge.

Robert Clay, acting pro se, filed a direct appeal of the dismissal of his action against the Douglasville-Douglas County Water and Sewer Authority ("WSA") and the City of Douglasville (the "City") arising out of his desire to develop a small piece of property in Douglasville. Because Clay was required to appeal via an application for discretionary review, this appeal must be dismissed.[1]

---

[1] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required numbers of judges, however, voted in favor of a hearing en banc on the question of disapproving *Brownlow v. City of Calhoun*, 198 Ga. App. 710, 712 (1) (402 SE2d 788) (1991).

On appeal of the grant of a motion to dismiss, this Court conducts a de novo review. See *Dove v. Ty Cobb Healthcare Systems*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012). "[O]ur role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts[.]" (Citation and punctuation omitted.) Id. "For the purpose of this determination, documents attached to and incorporated into the pleadings are considered to be a part of them." *Villa Sonoma at Perimeter Summit Condo. Assn. v. Commercial Indus. Bldg. Owners Alliance*, 349 Ga. App. 666, 667 (1) (824 SE2d 738) (2019); see also OCGA § 9-11-7 (a) (defining pleadings).

So construed, the pleadings show that Clay owned a less than one-acre parcel of real estate in the City on which he desired to construct an automotive repair shop. His plans showed that he intended to increase water-impervious surface area on the property by less than 5,000 square feet. Clay sought to obtain a building permit from the WSA, so, in June 2018, he submitted his proposed "construction documents/drawings" to WSA but the drawings were never rejected or approved. Rather, WSA marked up the plans to indicate that they did not meet the minimal regulations for a commercial property because more than 5,000 square feet of new *or*

2

*replaced* impervious surface was proposed to be constructed. Clay alleges that application of WSA regulations would require that Clay construct a water treatment system that would take up 76 percent of his parcel and cost $385,000. [2]

On December 4, 2018, Clay took a different approach and requested a variance from WSA's regulations, to which WSA responded:

> To your request for a variance from the stormwater regulations, we have previously explained that we cannot grant any such variance because these requirements come from the State of Georgia and we are required to enforce them under our Municipal Separate Storm Sewer System Permit from the State.

Two months later, Clay filed suit in superior court asserting that WSA wrongfully applied its regulations concerning post-construction stormwater management to his parcel because the regulations were superseded by federal and state statutory law. Clay alleged that under these other authorities, his property should be exempt from post-construction stormwater regulations because the parcel comprised less than one acre and he proposed to increase impervious surface area by

---

[2] Clay also submitted a second set of drawings, but, "WSA refused to review the drawings calling [them] 'fraudulent.'" He contends that WSA wrongly accused him of submitting design plans bearing an engineering stamp without that engineer's knowledge or consent.

less than 5,000 square feet. Clay asserted that application of the WSA stormwater regulations amounted to an inverse condemnation of his property and that the defendants acted fraudulently and in bad faith. Clay sought damages for the inverse condemnation, various costs, attorney fees, certain penalties, and other items.

The City and WSA answered, and WSA attached to its answer copies of the various regulations at issue. WSA then moved to dismiss Clay's complaint on several grounds, including his failure to state a claim upon which relief could be granted. The City and Clay filed motions for summary judgment. Following a hearing on all motions, the trial court "dispos[ed] of this case in its entirety upon the WSA's Motion to Dismiss." The trial court held that "the WSA has correctly applied the regulations to Mr. Clay's plans, and therefore he does not have a case for inverse condemnation." The trial court also held that "the species of 'taking' that Mr. Clay has alleged is via the government's use of regulatory or police powers, not eminent domain[,]" and that, therefore, "he has not made out a case that what is proposed here is a 'taking' of his property." Clay filed this direct appeal.

1. "Although not raised by either party, it is our duty to inquire into our jurisdiction in any case in which there may be a doubt about the existence of such

4

jurisdiction." (Citation and punctuation omitted.) *Hunt v. Callahan*, 353 Ga. App. 488, 488 (2) (838 SE2d 133) (2020). We conclude that we do not have jurisdiction.

Although a right of direct appeal lies from a final judgment, see OCGA § 5-6-34 (a) (1), an appellant is required to file an application for a discretionary appeal from a judgment of a superior court reviewing the decision of a state or local administrative agency. See OCGA § 5-6-35 (a) (1). We therefore look to the events that occurred between Clay and the WSA to determine if a "decision" of an "administrative agency" occurred that was subject to "review" in the trial court, which is a question of substance more than form. See *State v. International Keystone Knights of the Ku Klux Klan*, 299 Ga. 392, 402 (4) (a) (788 SE2d 455) (2016).

(a) "[A] 'decision,' as it is used with reference to administrative agencies, is a determination of an adjudicative nature." Id. No formal adjudicative procedure is required. Id. at 406 (4) (a). "[A]n administrative determination is adjudicative in character if it is particular and immediate, rather than, as in the case of legislative or rule making action, general and future in effect." (Citation and punctuation omitted.) Id. at 401 (4) (a). More specifically, "[d]eterminations of an adjudicative nature . . . are immediate in application, specific in application, and commonly involve an assessment of facts about the parties and their activities, businesses, and properties.

5

Id. "Administrative determinations of a legislative nature are prospective in application, general in application, and often marked by a general factual inquiry that is not specific to the unique character, activities or circumstances of any particular person[.]" (Citations omitted.) Id.

In the present case, WSA's denial of Clay's request for a variance from its regulations constitutes an adjudicative determination. WSA simply determined that based on the size of Clay's property and the specifics of his proposed construction plans that the applicable stormwater regulations barred Clay from proceeding without taking corrective measures and that WSA was not authorized to grant a variance. Thus, WSA's denial was based on the particulars of Clay's proposal and the decision pertained to Clay's property alone. See Id. at 404 (4) (a). Compare *Schumacher v. City of Roswell*, 301 Ga. 635, 637 (1) (803 SE2d 66) (2017) ("enactment of a new development code is an exercise of legislative power—and thus not an adjudicative 'decision'" requiring discretionary review).

(b) We also conclude that WSA is a local administrative agency for purposes of OCGA § 5-6-35 (a) (1). The Appellate Practice Act does not define "local administrative agency" expressly, but our Supreme Court has noted that "[i]n common legal usage, 'administrative agency' refers to a governmental body charged

6

with administering and implementing particular legislation." *International Knights*, 299 Ga. at 400 n. 20 (citing Black's Law Dictionary (5th ed. 1979)).

The legislature established the current WSA in 1985, as a "public body corporate," and its powers include the power to contract with the City with respect to a water and sewerage system, to include "apportioning or designating the responsibility for any functions normally maintained by a water and sewerage system." Ga. L. 1985, p. 3584, § 5. The purpose of the WSA includes

> maintaining and operating adequate water supply, treatment and distribution facilities and sewerage collection, treatment and distribution facilities, making such facilities and services thereof available to public and private consuers and users. . . and, *doing all things deemed by [WSA] necessary, convenient and desirable for an[d] incident to the efficient and proper development and operation for such type of undertakings*.

(Emphasis supplied.) Id. § 25.

In 2002, the City and WSA entered into an Intergovernmental Agreement Regarding Storm-Water Management which was intended, in part, to provide the WSA with the authority to implement a stormwater management program "and ensure compliance with environmental regulations by all entities, both public and private,

7

within the corporate boundaries of [the City.]" Thus, the WSA was charged with administering and implementing particular legislation.

Based on these and other aspects of the WSA enabling legislation and the Intergovernmental Agreement, we conclude that the WSA is a local administrative agency for purposes of OCGA § 5-6-35 (a) (1). See *International Knights*, 299 Ga. at 400, n.20.

(c) We turn then to whether Clay's action in superior court sought a "review" of WSA's decision requiring a discretionary appeal or whether it can be considered a stand-alone action that did not trigger OCGA § 5-6-35 (a) (1).

In 1991, this Court held that a final judgment in an action filed in superior court on the principal theory of inverse condemnation was subject to a direct appeal. See *Brownlow v. City of Calhoun*, 198 Ga. App. 710, 712 (1) (402 SE2d 788) (1991), overruled on other grounds by *West v. City of Albany*, 300 Ga. 743 (797 SE2d 809) (2017). But *Brownlow* predates several decisions by our Supreme Court that shed light on which cases are subject to discretionary review, as well as a decision that addresses the nature of inverse condemnation claims in general. These Supreme Court decisions show that *Brownlow* failed to fully address the degree to which trial court

8

judgments that arise out of administrative agency decisions are subject to the discretionary appeal procedure.

First, when considering the nature of the proceedings in superior court for the purposes of OCGA § 5-6-35 (a), "we look to the substance of those proceedings, not merely the form of the relief sought." *International Knights*, 299 Ga. at 407 (4). In the superior court, Clay challenged WSA's decision by arguing that WSA's regulations should not have applied to his property because they had been superseded by federal and state statutory law and that application of WSA's regulations to his property caused an inverse condemnation. And the superior court addressed those issues. Thus, on a very basic level, the superior court action certainly reviewed the decision of the WSA.

Second, our Supreme Court has held that one factor to be considered when determining whether a discretionary appeal is required is whether the appellant has already been heard in two tribunals on the relevant issues, once by the administrative agency and once by the superior court. See *Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 603-604, and n.6 (II) (807 SE2d 876) (2017).[3]

_____

[3] Ultimately, the court in *Diversified Holdings* did not address "whether an appeal from a true inverse condemnation proceeding would require a discretionary application." Id. at 605 (II).

9

Here, Clay's argument that WSA regulations do not apply to his property has already been addressed twice, by the WSA and the superior court, and that issue is a necessary component of his inverse condemnation claim. See generally *Ladzinske v. Allen*, 280 Ga. 264, 265 (626 SE2d 83) (2006) ("The clear intent of OCGA § 5-6-35 was to give the appellate courts the discretion not to entertain an appeal where the superior court had reviewed a decision of certain specified lower tribunals (i.e., two tribunals had already adjudicated the case).") (citation and punctuation omitted). The fact that the applicability of WSA regulations to Clay's property has been addressed twice supports the conclusion that a discretionary appeal is required.

Third, in *Mortgage Alliance Corp. v. Pickens County*, 294 Ga. 212, 215-216 (2) (751 SE2d 51) (2013), the Supreme Court reiterated an earlier holding that appeals to superior court "couched in terms of inverse condemnation" are subject to the same time deadlines as all other appeals of administrative agency decisions. It follows that a judgment by a superior court in an inverse condemnation action arising out of an administrative agency decision constitutes an appeal of that decision. Implicit in Clay's claim in the present action is the assertion that WSA's denial of a variance resulted in an unconstitutional application of the governing authority's regulatory or police power, such that the regulatory action resulted in a taking, i.e.,

an inverse condemnation. See *Diversified Holdings*, 302 Ga. at 606-608 (III); *Mayor & Aldermen of City of Savannah v. Savannah Cigarette & Amusement Services*, 267 Ga. 173, 174 (476 SE2d 581) (1996). Thus, in the superior court, he necessarily sought a review of the WSA decision below.

Fourth, in *Schumacher*, the Supreme Court clarified some of its own past decisions regarding discretionary appeals, including *O. S. Advertising Co. of Georgia v. Rubin*, 267 Ga. 723 (482 SE2d 295) (1997). See *Schumacher*, 301 Ga. at 638-639 (2). In *Rubin*, the plaintiff sought a regulatory variance "alleg[ing] that several city ordinances regulating signs were unconstitutional both on their face and as applied to its sign. The board denied the variance." *Rubin*, 267 Ga. at 724. The plaintiff raised the denial of the variance and the constitutional claim in the superior court. Id. Later, when the plaintiff appealed only that court's decision on the constitutional question, the Supreme Court dismissed the appeal because the plaintiff failed to file a discretionary application. Id. at 725. Thus, in *Rubin*, "[n]otwithstanding that the issue on appeal was the constitutional claim, . . . *Rubin* still involved an appeal from an administrative agency's denial of an individual variance request." *Schumacher*, 301 Ga. at 639 (2). Similarly, here, Clay's appeal involves the denial of an individual

11

variance request even though his superior court action was couched in terms of inverse condemnation.

Finally, *Brownlow* relied in part on its conclusion that "the word 'condemnation' as it appears in the exceptions to the rule of OCGA § 5-6-35 (a) (1) was intended by the legislature to except 'inverse' as well as classic condemnation cases therefrom." *Brownlow*, 198 Ga. App. at 712 (1). But, "a claim for condemnation is distinct from a claim for inverse condemnation and the damages recoverable by a property owner for each cause of action are different." *Morgan County v. Gay*, 352 Ga. App. 555, 571 (3) (a) (2) (834 SE2d 576) (2019). And in *Diversified Holdings*, the Supreme Court seriously undermined whether an adverse impact on real estate that results from a governing authority's use of its police power (such as through stormwater regulations in this case) as opposed to eminent domain constitutes an inverse condemnation absent a physical occupation or a regulation "so onerous that its effect is tantamount to a direct appropriation or ouster" or so complete that the owner was "completely deprived of the use of the property." (Citation omitted.) 302 Ga. at 607-608, 610 (III).[4] Accordingly, and for all the reasons discussed above, we

[4] Even though *Diversified Holdings* concerned a zoning ordinance, and "zoning is to be distinguished from other regulations with which a developer must comply," *Fairfax MK, Inc. v. City of Clarkston*, 274 Ga. 520, 520 (1) (555 SE2d 722) (2001),

12

conclude that *Brownlow's* conclusion regarding the exception in OCGA § 5-6-35 (a) (1) is no longer in line with Supreme Court authority.

In sum, we conclude that Clay was required to file an application for discretionary appeal from the superior court's dismissal of his action and that *Brownlow* must be disapproved to the extent it holds otherwise. We note that the discretionary appeal procedure does not deny a party the right to appellate review, which in these cases has already been conducted by the superior court. Rather, it allows appellate courts "to consider the appellant's enumerations of error in a streamlined process." *Rubin*, 267 Ga. at 724.

*Case dismissed. Dillard, P. J., and Brown, J., concur.*

---

we rely on *Divsified Holdings* for its explanation of the distinction between regulatory actions that result in takings and those that reflect an exercise of police power by a governing authority that do not result in a taking.